Back then, the case number four. Wait a minute, we have a counselor. Let her get set up. You did say Rowe, right? What? You did say Rowe, R-O-W-E? I'm sorry, I didn't hear you. You did say Rowe? Yes. Okay. Yes. You missed your time before when you weren't here. I was sitting here the whole time. My apologies if maybe I didn't hear. You were deep in thought about the case. So now you should be briefed. All right. We're here now and let's proceed with Al Habibi v. Whitaker. Counselor? Okay. Good morning, Your Honors. May I please the court? My name is Tadisha Rowe on behalf of the petitioner, Mr. Abdul Karim Al Hababi. I'm here today on behalf of the petitioner's position that BIA erred when they denied his motion to reopen. First, it is the petitioner's position that the motion to reopen was filed timely. According to statutory guidelines, there is a 90-day bar if there is a final administrative order. In this case, there was, in fact, a 90-day bar in 2003 when the final administrative order was entered. However, there is an exception if there are changed country conditions, which in this case is applicable to the petitioner. In his case, the changed country condition is the civil war which began in Yemen in 2015. That began around March of 2015 and then shortly thereafter, in 2016, the petitioner's son was murdered. As I will explain, the murder of his son was directly related to the changed circumstances and the country conditions, the civil war. Neither information was available when he applied for asylum in 2001, nor during his hearings or motions for reconsideration, which occurred from 2001 to 2003. Let's assume it's true that those are changed country conditions. One occurred in roughly March of 2015, the other in September of 2016. The petition to reopen wasn't filed until almost two years later, in February of 2018. Yes, Your Honor, and there is no time bar in terms of once there are changes in country conditions. Moreover, I would like to let Your Honors be aware of the fact that the petitioner did file his motion pro bono while he was detained. He is of Muslim descent. He does speak Arabic as his first language, and so there are a lot of impediments that were in place in his case that probably would not be the norm. When was he detained? He was detained in December of 2017. So it was after both of, he was not detained when both of these events occurred. He was not detained when both of these events occurred. However, he did have other incidents, including health impediments, which I did speak about in his briefs. He had two heart attacks after the death of his son. So there were multiple factors to explain why he did not file quickly after. Bottom line is, he came in 1999 and overstayed. In 2001, they proceeded against him, but he still was not in custody. He never was. Right, and he did continue to pursue asylum relief. I will make it clear that unlike case law that has cited people who have decided to pursue asylum once they're actually in removal proceedings, he proactively pursued asylum upon entering the United States, and he has been very consistent with his reasons for pursuing asylum, which was fear of persecution from opposing tribal members. Also noteworthy is the fact that from 2001 to 2003, he consistently filed motions to appeal. He filed motions for reconsideration, all of which did not work to his favor. Unfortunately, during that time, there was not a lot of directly after the 2001 9-11 terrorist attacks, and so there was just not a lot of information to support his case. However, now we do have country conditions that were submitted for 2016 that directly reference tribal wars as well as attacks on civilians by non-state actors who the government is unwilling or unable to protect them against. What group does he claim to be part of that has been subjected to a pattern or practice of persecution? He is a Sikh, Your Honor. The exact group, it's a subsect. It's a very small tribal group. I cannot pronounce the name, but he is a Sikh, meaning that he is a prominent member of this group. And was there anything in the information that came out about the changed country condition that they are targeting Sikhs as opposed to just killing people? Well, again, I would like to preface this by saying that although a small sect is not directly listed in country conditions, it does not mean that it excludes the petitioner from his claim here. Specifically, in the country conditions, it does list that tribal members, rogue tribal members, tribal militia members at that have targeted civilians, that there are ongoing tribal conflicts there. They do cite ISIS, they cite Al-Qaeda, they cite Daesh, several different names that they use interchangeably and that they lump together. And so the fact that there's not one particular group, and especially when you have so numerous subgroups, there should not within itself exclude him as being non-credible for his motion to reopen. In addition to this, the petitioner has established that he does have a prima facie claim for asylum. And this is according to the country conditions which he submitted, as well as independent evidence of the letter from his son, the medical report, and the death certificate, as well as his son's school curriculum, which all support the petitioner's position that because his son was involved in American studies and his father had left the country almost 20 years ago and never returned, that he was persecuted as a result of this. Of course, there is the ongoing civil war of 2015, meaning that many persons, many individuals within the country are at risk. However, in this case, the actors came directly to his home and shot his son in the head. The medical reports show that the gunshot wound entered through one jaw, exited through another jaw. It does show that his daughter-in-law was kidnapped, and at this time his family is displaced. So at this initial level, where all that's required is a prima facie finding that he is eligible for asylum, I think that the evidence is compelling to such that a reasonable fact-trier would find that he has met the requisite fear of persecution in order to at least grant his motion to reopen so that he can fully flesh out the details of his case. What's the evidence that his son was targeted by ISIS? There's certainly evidence in the record that his son was killed. But other than your client's own statements, what's the evidence that ISIS was responsible for this? Well, we have the client's statements. We also do have a letter that was submitted from his son documenting how the family home was ambushed. And I will also like to note that... But does that... I'm sorry to interrupt. Does that identify ISIS? It certainly says he was targeted. But what's the evidence that those that targeted him were connected to ISIS? Even assuming that letter can pass the evidentiary threshold. Sure, absolutely, Your Honor. And respectfully, I will guide you back to my initial answer to this, which is I don't think that it's important that the crux of his claim rests on whether or not it's ISIS. The fact that his son wrote a letter to say that militia men ambushed his home I think is sufficient enough to show that there are non-state actors that are persecuting him and his family and that his fear of persecution is justified, whether he says ISIS. And keep in mind this is also... His son is, in his early 20s, someone who is emotional because he witnessed the shooting of his brother in front of his face. So if they're not wearing uniforms to say that I am ISIS, we cannot reasonably expect him to identify them as ISIS. But we know that they are non-state actors who ambushed his home and murdered his brother. But it still has to go back to the fact that that took place or that he has this fear of persecution going forward based on he's being targeted by some group because of his membership in another group. So it can't just be a fear of if I get sent back, I'm going to be killed by ISIS. There has to be more than that. Right, Your Honor. And I do believe that in this case, especially with the country conditions that he has proven, more than that. I will direct you to the 2016 Human Rights Report. This was submitted or created after the Civil War began. And there are specific instances of students who disappeared due to politically motivated reasons. They were suspected of working with foreign diplomatic missions. That's on RSA 33. Also on RSA 34, they speak of a child, a 17-year-old who was tortured because they believe that he was linked or his family was linked to opposing parties. In addition to that, Your Honor, I would like to... I know that I'm running out of time here. I would like to assert that political dissidents, parents of political dissidents, is a recognized protected group within this jurisdiction. As well as kinship is also a protected group. And so the fact that he is related to his son who was murdered by non-state actors should within itself meet the prima facie level to show that he has at least a 10% reasonable fear of persecution if he is returned to Yemen. Coupled with his own evidence that he submitted in 2001, including medical reports and expert reports that show that he himself has already been targeted by militia members. Thank you, Your Honor. Thank you, Your Honor. Ms. Glazer. Good morning. May it please the Court. Sherry Glazer appearing on behalf of the United States Attorney General. Your Honors, the Board in this case acted well within its discretion when it denied Mr. Hababi's untimely motion to reopen. His motion was untimely. It was filed nearly 15 years after his final order of removal. And while there is this exception for changed country conditions, it doesn't say that the motion is untimely. It just excuses that it was filed untimely. And we all watch the news. We all see what's going on between the Houthi rebels and the Saudi-led coalition, which is what I presume Mr. Hababi is referring to when he says a civil war. I would not qualify that as a civil war, but I would also ask this Court to please keep in mind that his claim is not at all based on that conflict. It is very clear that his claim is based on a fear of ISIS, but he did not meet his burden to show that he will be singled out for persecution or torture by ISIS if returned to Yemen, or that he will be subject to persecution per se at the hands of ISIS if returned to Yemen based on either his relationship to his son or his religion. And that is the burden that he needs to meet in this Court, under this Court's precedent in Pelinkovich, and that's 366 F3rd 532 at 536. He has simply not met that burden. We have a handful of evidence that was submitted in this case. I think the two pieces of evidence that have the most information are the letter and the human rights report, but neither of those pieces of evidence show that Mr. Hababi will be singled out whatsoever for any harm or anything if he returns to Yemen. Now, putting aside the Board's determination regarding the weight of the evidence given to the letter, I do think the Board properly determined that it's not entitled to full weight, but because it reached that alternative argument given the limited amount of time, I'd prefer to focus on that. So we have this letter that describes an attack that happened on his home, but as Your Honor pointed out, it doesn't mention or even refer to ISIS. It says, evil criminal outlaw militias were the perpetrators who attacked his home, individuals who don't respect religious or humanitarian norms. And it also didn't mention any motivation, being his son's purported ties to the CIA, and his motion and his renewed asylum application were based on that letter, and all of a sudden we jump to the motion and the application that then says the perpetrator was ISIS, that then says the motivation was his son's ties to the CIA. But we don't have anything to bridge that gap. We don't have any information as to how he came up with that. But even putting that aside, assuming it was ISIS, assuming that the motivation was what he says, it still does not support his claim. This attack occurred in September 2016. He filed his motion to reopen a year and a half later in February 2018, and the only thing it rests on is this one single attack. And I'm not at all trying to minimize what happened to his son. What happened to his son is horrible, but it doesn't provide any evidence that anyone is going to target Mr. Hababi when he goes back to Yemen. There's no evidence that anyone in ISIS has asked about his whereabouts or anyone in his family, has threatened Mr. Hababi or anyone in his family, or has subjected his family to any harm whatsoever. And if we turn to the Human Rights Report, I read through this report several times to make sure I saw every reference to ISIS in the report and to look at every reference to see whether it all supported his claim, and none of them do. And I'm very happy to walk the court through every reference and explain why. And so if I could start just in his motion. What he says in his motion is that he, and his asylum application, is that he fears going back for two motivations, that relationship to his son, and what he says is because I'm not of the same branch of religion as ISIS. But as Your Honor again pointed out, we don't know. He didn't provide any evidence what branch of religion he is. There's nothing really to analyze. His counsel now says that he's Sikh, but we don't have any evidence of that whatsoever. And on top of that, he says, he really refers to one reference that says that ISIS has targeted individuals who the group believes don't interpret Sharia law, essentially how the group does. But again, we don't have any information on how Mr. Hababi interprets Sharia law. And that particular reference is on page 41. The report says terrorist groups, including Al-Qaeda and ISIS, carried out many deadly attacks against government representatives and installations, Houthi combatants, members of Hurok, which is a political party, and other actors accused of behavior violating Sharia law. These were all political actors. There's no evidence that Mr. Hababi is in any way a political actor and falls into this category. On page 29, it says insurgent groups claiming affiliation with Al-Qaeda or ISIS committed politically motivated killings along with Houthi Sali rebels. And even if we say, okay, the attack and the killing of his son was politically motivated, there is no evidence that ISIS then goes after family members of these individuals. And on page 30, it indicates that an August report by the UN Office of the High Commissioner for Human Rights documented 27 killings in Aden in January, most of which were perpetuated by Al-Qaeda and ISIS. But, again, that's 27 killings, and that's horrible. Yemen is a country of over 28 million people. This does not indicate that Mr. Hababi is going to be singled out whatsoever. And on top of that, Yemen is separated into 21 governorates or provinces. Mr. Hababi's family lives in Rada'a, and according to the birth certificate and the death certificate on page 21 and 25, Rada'a is in the al-Badra province, which is kind of, it's towards the west, kind of sits in the middle of the western part of the country. And the governorate of Aden is on the southwest on the Gulf of Aden. So that's not even where Mr. Hababi is from. And then on page 30 also, there's an indication that ISIS claimed responsibility for a series of attacks on Houthi Sali Shia mosques. Again, no evidence that Mr. Hababi attends that type of mosque, so that does not refer to him. And finally, also on page 30, in June, ISIS killed at least 42 people, mostly soldiers and one child, with four suicide bombings at security targets in the Hadhramaut governorate, which is to the east, and it runs from the border of Saudi Arabia down to the Arabian Sea. Again, these targets at security clearances or security areas has nothing to do with his claim, and it's nowhere near where he lives in Yemen. So for all of these reasons, he now seems to be trying to just tie any reference whatsoever in the Human Rights Report to his claim, and he just cannot do that. What the board analyzed was the claim that he set forth was that, I'm going to be targeted by ISIS because of my relationship to my son or my religion, and there's nothing in the record to show that he will in fact be targeted or be singled out for harm whatsoever. The only last quick point I'd like to make, if you don't mind, is he makes an argument in his opening brief that the board abused its discretion because it didn't look to his claim that the reason ISIS believed he was an informant for the CIA was tied to him attending an American school. But if you look to his motion and you look to his asylum application on pages 7 and 47, I believe it is, what he says in both of those documents was that his son was killed by ISIS, his son was 19, his son had a promising future because he was attending this school. In the next line he says, my son was living in our family home in Rada'ah. In the next line he says, ISIS believed my son was an informant for the CIA, but he did not say in either of those documents, ISIS believed my son was an informant for the CIA because he was attending this school. He just said my son had a promising future because he was attending this school, so there was nothing for the board to address in that context. And if your honors have any questions or if not, we ask that, thank you. Thanks to both counsel, and the case will be taken under advisement.